FILED
2026 Oct-15 PM 02:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ROCQUELLE MCKEITHEN,** | } | |
| **Plaintiff,** | } | |
| **v.** | } | **Case No. 2:26-cv-00132-MHH** |
| **CITY OF HOOVER, ALABAMA, et al.** | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rocquelle McKeithen has sued the City of Hoover, former Police Chief Nick Derzis, Officer Luke Morris, Officer Carrie Rossomme, and another unnamed officer for false imprisonment, false arrest, and failure to supervise and train. (Doc. 1-1). The defendants have moved to dismiss Ms. McKeithen's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 3). This opinion resolves the defendants' motion.

The opinion begins with the standard that governs a district court's review of a motion to dismiss under Rule 12(b)(6). Consistent with that standard, the Court then summarizes Ms. McKeithen's factual allegations, presenting the allegations in the light most favorable to her. Finally, the Court analyzes the parties' claims and defenses based on Ms. McKeithen's factual allegations.

**I.**

Under Rule 12(b)(6), a defendant may move to dismiss claims for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A court must accept well-pleaded facts as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). "A complaint is subject to dismissal under Rule 12(b)(6) when its factual allegations, on their face, establish an affirmative defense that bars recovery." *Myrick v. Fulton Cnty.*, 69 F.4th 1277 (11th Cir. 2023).

## II.

In September 2023, Ms. McKeithen's father gave her a car and documented the transfer. (Doc. 1-1, pp. 5–6, ¶¶ 17, 23). Ms. McKeithen's aunt filed a false police report in which she stated that the car was stolen. (Doc. 1-1, p. 5, ¶ 18). The Birmingham Police Department investigated the complaint and determined that it was meritless. (Doc. 1-1, p. 5, ¶ 19). As part of this investigation, Birmingham Police Officer Mike Allison spoke with Ms. McKeithen's father. (Doc. 1-1, p. 5, ¶¶ 19–20). In late December 2024, Ms. McKeithen's father passed away. (Doc. 1-1, p. 5, ¶ 13).

On January 2, 2024, Ms. McKeithen went to the Car Max in Hoover to sell the car she received from her late father to pay for her father's funeral. (Doc. 1-1, p. 5, ¶ 13). The salesperson questioned Ms. McKeithen about the ownership of the vehicle, and Ms. McKeithen produced documentation that showed that she owned the car. (Doc. 1-1, p. 5, ¶ 14). While Ms. McKeithen was at the dealership, three Hoover police officers, Officer Morris, Officer Rossomme, and the unnamed officer Ms. McKeithen identifies in her complaint, approached Ms. McKeithen. (Doc. 1-1, p. 5, ¶¶ 15–16). The police officers questioned Ms. McKeithen regarding ownership of the vehicle, and Ms. McKeithen explained that her father had transferred the car to her, her aunt had filed a false theft report, and the Birmingham Police Department already had cleared her. (Doc. 1-1, p. 5, ¶¶ 17–20). One of the Hoover officers

contacted BPD Officer Allison to confirm Ms. McKeithen's story. (Doc. 1-1, p. 6, ¶ 21). Officer Allison told the Hoover police officer that the BPD had cleared Ms. McKeithen. (Doc. 1-1, p. 6, ¶ 22). Ms. McKeithen presented the Hoover police officers with documents proving her ownership of the car. (Doc. 1-1, p. 6, ¶ 23).

Despite this proof, the Hoover police officers arrested Ms. McKeithen and took her to the Hoover jail. (Doc. 1-1, p. 6, ¶¶ 24–25). Ms. McKeithen was released the following day. (Doc. 1-1, p. 6, ¶ 25). Because of her arrest and incarceration, Ms. McKeithen developed PTSD and depression; she needs long-term medical treatment. (Doc. 1-1, p. 6, ¶ 26).

When the Hoover police officers arrested Ms. McKeithen, Mike Derzis was the Chief of Police for the City of Hoover Police Department. (Doc. 1-1, p. 4, ¶ 9). Chief Derzis was the commanding officer of Officer Rossomme, Officer Morris, and the third police officer. (Doc. 1-1, p. 4, ¶ 9).

On June 28, 2024, Ms. McKeithen filed a notice of claim with the City of Hoover. (Doc. 1-1, p. 6, ¶ 27). On January 2, 2026, Ms. McKeithen filed this action in the Circuit Court of Jefferson County, Alabama, Bessemer division. Ms. McKeithen has pleaded claims for "false arrest" (Count I), "false imprisonment"

(Count II), and "failure to supervise and training" (Count III). (Doc. 1-1, pp. 6–11, ¶¶ 28–62).[1]

On January 28, 2026, the defendants removed the action to this federal court, (Doc. 1), and moved to dismiss this action, (Docs. 2–5, 8). The defendants argue that the false arrest and false imprisonment claims fail under federal and state law because the theft report gave probable cause for the arrest; that the officers have qualified immunity under federal law and state-agent immunity under state law; that Ms. McKeithen has not adequately pleaded facts to support her failure to train or supervise claims; and that the complaint is a shotgun pleading. (Doc. 2).

## III.

Ms. McKeithen's federal claims under 42 U.S.C. § 1983 and the Hoover officers' qualified immunity defenses turn upon whether there was at least arguable probable cause for the officers to arrest Ms. McKeithen.

"[A] warrantless arrest without the existence of probable cause violates the Fourth Amendment and forms a basis for a § 1983 claim." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). "[P]robable cause exists if the totality of the circumstances could persuade a reasonable officer that there is a 'substantial chance of criminal activity by the person who is arrested.'" *Harris v. Hixon*, 102 F.4th 1120,

[1] Ms. McKeithen asserts her claims under 42 U.S.C. § 1983 for violations of her Fourth, Fifth, and Fourteenth Amendment rights. Ms. McKeithen also seeks relief for the same claims under state law. (Doc. 1-1, p. 4, ¶¶ 3–4).

1126 (11th Cir. 2024) (citation omitted). "[O]fficers cannot unreasonably and knowingly disregard or ignore evidence or refuse to take an obvious investigative step that would readily establish that they lack probable cause to arrest a suspect. *Harris*, 102 F.4th at 1129. Allegedly exculpatory "[e]vidence that is speculative or ambiguous or dependent upon the self-serving statements of the suspect does not suffice to bring a case within that category." *Davis v. City of Apopka*, 78 F.4th 1326, 1343 (11th Cir. 2023). "Ultimately, probable cause will only be vitiated if the exculpatory evidence 'did not merely make it less likely probable cause existed but *obviously and irrefutabl*y established that it didn't exist.'" *Scott v. City of Miami*, 139 F.4th 1267, 1274 (11th Cir. 2025) (emphasis in original) (quoting *Davis*, 78 F.4th at 1343).

If actual probable cause is lacking, an officer may be entitled to qualified immunity "so long as the officer had 'arguable probable cause' for the arrest." *Alston v. Swarbrick*, 954 F.3d 1312, 1318 (11th Cir. 2020) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007)). "Arguable probable cause exists if 'reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest the plaintiff." *Alston*, 954 F.3d at 1318 (quoting *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006)); *Carter v. Butts Cnty.*, 821 F.3d 1310, 1320 (11th Cir. 2016) (same) (citation omitted). Courts employ an objective standard in determining whether

arguable probable cause exists, "asking whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotations omitted) (quoting *Vaughan v. Cox*, 264 F.3d 1027, 1036 (11th Cir. 2001)).[2]

When a plaintiff pleads a ~~valid~~ claim under § 1983 for an alleged constitutional violation, a district court must dismiss the claim based on the affirmative defense of qualified immunity if the officers raise the defense and the record indicates that the officers' exercise of their discretionary authority did not "violate[] clearly established law." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (citation omitted). "To be clearly established, a right must be well-established enough that every reasonable official would have understood that what he is doing

---

[2] Ms. McKeithen's false imprisonment and failure to train and supervise claims proceed from her false arrest claim. "A false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment." *Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021). "The elements of common law false imprisonment are '(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm.'" *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1562 n.3 (11th Cir. 1993) (citation omitted), *opinion modified on reh'g on other grounds*, 15 F.3d 1022 (11th Cir. 1994). "[T]o establish a due process violation, a plaintiff must show that the officer acted with deliberate indifference, i.e., demonstrating that the officer 'had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere negligence.'" *Helm*, 989 F.3d at 1278–79. "If an officer has arguable probable cause to seize an individual, that finding may defeat a claim of deliberate indifference." *Helm*, 989 F.3d at 1279.

Like the Fourteenth Amendment, the Fifth Amendment protects due process rights, but the Fifth Amendment "protects a citizen's rights against infringement by the federal government, not by state government." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1328 (11th Cir. 2015). Accordingly, because the Hoover officers are not federal officials, the Court dismisses Ms. McKeithen's § 1983 claims to the extent she bases them upon the Fifth Amendment

violates that right." *Marbut v. Phillips*, 176 F.4th 1256, 1263 (11th Cir. 2026). "[C]ourts generally 'need to identify a case where an officer acting under similar circumstances was held to have violated' the Constitution." *Zorn*, 146 S. Ct. at 930 (internal alteration omitted) (citation omitted). In the false arrest or imprisonment context, officers may rely on qualified immunity if the officers had "arguable probable cause" to arrest the plaintiff. *Carter*, 821 F.3d at 1319–20.

The facts in *Carter v. Butts Cnty.* are analogous to the alleged facts of this case such that *Carter* clearly establishes Ms. McKeithen's rights under the circumstances she has alleged. In *Carter*, the owner of a house obtained through foreclosure hired the plaintiffs to prepare the house for resale. *Carter*, 821 F.3d at 1315–16. While the plaintiffs were working at the house, the defendant deputy sheriff, who forfeited the house in the foreclosure proceedings, arrested the plaintiffs for burglary. *Carter*, 821 F.3d at 1318. The deputy later argued he also had probable cause to arrest the plaintiffs for trespass and theft. *Carter*, 821 F.3d at 1320. The Eleventh Circuit found that the deputy sheriff lacked even arguable probable cause to arrest the plaintiffs for burglary, theft, or trespass because signs posted on the house, which the deputy removed and replaced with "KEEP OUT" signs, indicated that the plaintiffs were authorized to enter the house and remove property from it; the deputy sheriff's colleague "told him that [Plaintiffs'] paperwork appeared to be in order;" and the plaintiffs attempted to give the deputy sheriff additional documentation that

proved their right to enter the property but the deputy sheriff "refus[ed to] even look at it." *Carter*, 821 F.3d at 1321. The Eleventh Circuit held that it was "clear that no reasonable officer with the information that was readily available to [the deputy sheriff] at the time he arrested Plaintiffs could have believed that he had probable cause to arrest them for burglary, criminal trespass, or theft." *Carter*, 821 F.3d at 1321.

Like the signage and documentation in *Carter* that should have alerted a reasonable officer that the plaintiffs were authorized to occupy the deputy sheriff's former house, the documentation that Ms. McKeithen alleges that she provided the Hoover officers established that she owned the car she was attempting to sell at Car Max and thus had legal authority to possess it and sell it. As in *Carter*, Ms. McKeithen's story was corroborated by another law enforcement officer, BPD Officer Allison. Ms. McKeithen alleges that the Hoover officers' only indication that the car was stolen was a discredited theft report from a disgruntled relative. Under the totality of the alleged facts, no reasonable officer could have reasonably believed that there was probable cause to arrest Ms. McKeithen for theft of the car. No other possible crime appears on the face of the complaint. Given the *Carter* decision, a reasonable officer, armed with the information supplied to the Hoover officers, would have understood that their conduct violated Ms. McKeithen's constitutional rights. Accordingly, the defendants lacked even arguable probable

cause for their arrest and subsequent jailing of Ms. McKeithen. Thus, Ms. McKeithen has stated a § 1983 claim for violations of the Fourth and Fourteenth Amendments, and the defendants are not entitled to qualified immunity based on the allegations in Ms. McKeithen's complaint.

***

Similarly, Ms. McKeithen's state-law claims against the Hoover arresting officers and the officers' state immunity defenses turn on whether the officers had arguable probable cause to arrest Ms. McKeithen. Under Alabama law, a false arrest requires proof "that the defendant caused [the plaintiff] to be arrested without probable cause." *Ex parte Harris*, 216 So. 3d 1201, 1213 (Ala. 2016) (quoting *Higgins v. Wal–Mart Stores, Inc.,* 512 So. 2d 766 (Ala. 1987)). False imprisonment is "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." ALA. CODE § 6-5-170. "A false arrest will support a claim of false imprisonment." *Harris*, 216 So. 3d at 1213 (citing *Upshaw v. McArdle,* 650 So. 2d 875 (Ala.1994)).

Under Alabama law, the immunity available to police officers is a hybrid of common-law and statutory sources:

> [A] State agent shall be immune from civil liability in his or her personal capacity if his or her conduct involved, among other things, . . . exercising his or her judgment in the administration of a department or agency of government, including, but not limited to . . . hiring, firing, transferring, assigning, or supervising personnel or . . . exercising judgment in the enforcement of the criminal laws of the State,

> including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to [ALA. CODE] § 6-5-338(a).

*Ex parte McGuire*, No. SC-2024-0419, __ So.3d __, 2025 WL 1776553, at *3 (Ala. June 27, 2025), *reh'g denied* (Aug. 22, 2025) (internal alterations, omissions, and quotation marks omitted) (quoting *Ex parte City of Montgomery*, 99 So. 3d 282, 292 (Ala. 2012*)); see also Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000) (explaining history of state agent immunity and establishing test); *Hollis v. City of Brighton*, 950 So. 2d 300 (Ala. 2006) (modifying *Cranman* test to account for ALA. CODE § 6-5-338). In turn, ALA. CODE § 6-5-338 reads:

> (a) Every peace officer … who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as a peace officer … by the state or a county or municipality thereof, … and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.
>
> (b) This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers. No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off-duty hours.

ALA. CODE § 6-5-338(a)–(b) (2016).[3]

Here, the general predicates for immunity are met—the officers are employees of the City of Hoover, an Alabama municipality, and arresting and jailing suspects is a standard discretionary function for police officers. *See Ex parte City of Homewood*, 231 So. 3d 1082, 1087 (Ala. 2017); *Swan v. City of Hueytown*, 920 So. 2d 1075, 1079 (Ala. 2005) (explaining that "arrests and attempted arrests," which require officers to exercise judgment, "clothe[] the officer in State-agent immunity").

There are two exceptions to state-agent immunity and immunity under ALA. CODE § 6-5-338:

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Harris*, 216 So. 3d at 1209 (internal quotation marks omitted) (quoting *Cranman*, 792 So. 2d at 405). A plaintiff bears the burden of establishing one of these

[3] Effective October 1, 2025, ALA. CODE § 6-5-338 has been replaced with ALA. CODE §§ 6-5-338.1 through 6-5-338.4. The changes are not retroactive. ALA. CODE § 6-5-338.4(a) ("The protections afforded a law enforcement officer under Sections 6-5-338.2 and 6-5-338.3 apply to any cause of action that accrued on or after October 1, 2025.")

exceptions. *See Harris*, 216 So. 3d at 1209 (quoting *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008)).

In the context of false arrest, Alabama courts have interpreted these exceptions to impose a "standard of 'arguable probable cause' in determining whether a police officer was immune from plaintiff's false-arrest claim pursuant to the immunity provided police officers in § 6–5–338(a)." *Harris*, 216 So. 3d at 1213. Under Alabama law, arguable probable cause exists "when an officer makes an arrest lacking probable cause if officers of reasonable competence in the same circumstances and with the same knowledge would disagree as to whether probable cause existed." *Harris*, 216 So. 3d at 1213 (Ala. 2016) (citing *Borders v. City of Huntsville*, 875 So. 2d 1168 (Ala. 2003)). Alabama appellate courts have found that questions of fact concerning arguable probable cause existed in several cases. *See Borders*, 875 So. 2d at 1179–82 (finding arguable probable cause was jury question where there was disputed testimony on whether officer had seen arrestee get into a fight); *Greene v. Byrd*, 897 So. 2d 1107, 1109–16 (Ala. Civ. App. 2003) (finding arguable probable cause was a jury question where there was disputed testimony on whether arrestee was or even could have been playing music loud enough to violate noise ordinance); *but see McGuire*, 2025 WL 1776553, at *5–6 (finding arguable probable cause to arrest plaintiff for theft when she took a campaign sign, whether or not plaintiff was correct that the campaign signs were illegally placed).

Here, for the reasons discussed above, Ms. McKeithen has alleged facts that, if proven, would demonstrate that officers of reasonable competence in the same circumstances and with the same information as the Hoover officers would conclude that they lacked probable cause to arrest and jail Ms. McKeithen.[4] Accordingly, Ms. McKeithen has adequately pleaded state law claims for false arrest and imprisonment against the Hoover officers, and, based on Ms. McKeithen's factual allegations, the officers are not entitled to state-agent immunity.

***

Turning to Ms. McKeithen's claims against Chief Derzis, Ms. McKeithen alleges only that Chief Derzis was the commanding officer of Officer Morris, Officer Rossomme, and the third arresting officer, and in his capacity as chief was responsible for those officers' training and supervision. (Doc. 1-1, pp. 4, 10, ¶¶ 9, 55). Ms. McKeithen has not alleged that Chief Derzis personally participated in or was aware of the arresting officers' conduct. Nor has she explained what training or supervision Chief Derzis did or did not give.

These allegations are insufficient to state a § 1983 claim. "Vicarious liability does not apply to § 1983 suits. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Turner*

[4] The newer version of the immunity statute includes a "clearly established" requirement in some circumstances, but Eleventh Circuit cases suffice to clearly establish the law. *See* ALA. CODE §§ 6-5-338.1(1), 6-5-338.2(b)(2).

*v. Williams*, 65 F.4th 564, 580 (11th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 676). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Brown*, 906 F.2d at 671 (citations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown*, 906 F.2d at 671 (citations omitted).

Because Ms. McKeithen has not alleged facts that indicate that Chief Derzis was aware of a similar pattern of constitutional violations and the need for correction or training, Ms. McKeithen has not adequately pleaded a § 1983 claim against Chief Derzis.

Ms. McKeithen also has failed to state a valid state-law claim against Chief Derzis. Under Alabama law, "the doctrine of respondeat superior does not hold supervisors, as co-employees, vicariously liable for the torts of their subordinates." *Ware v. Timmons*, 954 So. 2d 545 (Ala. 2006), *as modified on denial of reh'g* (Sept. 22, 2006).

Therefore, the Court will dismiss Ms. McKeithen's claims against Chief Derzis.

***

Ms. McKeithen's federal claims against the City of Hoover also fail. Under § 1983, the standard for municipal liability is like the standard for supervisory liability for an individual. "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Edwards v. Grubbs*, 169 F.4th 1261, 1281 (11th Cir. 2026) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). A plaintiff may sue a municipality under § 1983 only when "when one of its policies, customs, or practices causes a constitutional injury." *Edwards*, 169 F.4th at 1280 (citing *Monell*, 436 U.S. at 690). "A failure to train or supervise must reflect a deliberate or conscious choice by a municipality." *Edwards*, 169 F.4th at 1281 (quoting *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)) (internal brackets omitted). "To establish a deliberate or conscious choice or such deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Edwards*, 169 F.4th at 1281 (quoting *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir 1998)). "'[A] single incident of unconstitutional activity is not sufficient to impose liability' against a municipality." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (citation omitted).

Here, Ms. McKeithen has not alleged facts that show that the City of Hoover had a custom or policy of arresting individuals in similar circumstances without probable cause, and Ms. McKeithen has not alleged facts supporting her claim that the city knew of a need for training or supervision but failed to provide it. Accordingly, Ms. McKeithen has not adequately pleaded a § 1983 claim against the City of Hoover.

With respect to her claims against the City of Hoover under Alabama law, a city may be liable for its failure to train or supervise. *See Ex Parte City of Midfield*, 161 So. 3d 1158, 1169 (Ala. 2014) (denying summary judgment on failure to train and supervise claims against municipality where it was unclear which individuals were charged with the training and supervision of police officers, and thus whether underlying actors had state-agent immunity, which would have extended to the municipality). Municipalities may be liable for "injur[ies] . . . or wrong[s] . . . done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty." ALA. CODE § 11-47-190. Still, ALA. CODE § 11-47-190 excludes municipal liability for intentional or wanton conduct. *Harris*, 216 So. 3d at 1216 (citations omitted).[5]

[5] Additionally, "if a municipal peace officer is immune pursuant to § 6–5–338(a), then, pursuant to § 6–5–338(b), the city by which he is employed is also immune." *Ex Parte City of Montgomery*,

Ms. McKeithen's allegations concerning the City of Hoover are confusing and perhaps contradictory. Ms. McKeithen seems to allege reckless behavior on the part of the Hoover officers. (Doc. 1-1, p. 10, ¶¶ 58-59). She also alleges negligent failure to train. (Doc. 1-1, p. 10, ¶ 60). The proper way to resolve pleading deficiencies in a removed case is to order repleading. *See* FED. R. CIV. P. 81(c) ("After removal, repleading is unnecessary unless the court orders it."). Repleading is warranted here.

**IV.**

Accordingly, the Court grants in part and denies in part the defendants' motion to dismiss. The Court grants the motion as to all claims against Chief Derzis and the § 1983 claims against the City of Hoover. The Court denies the motion as to all other claims.

Within 21 days of this order, Ms. McKeithen shall file an amended complaint that complies with federal pleading standards and this order. In her amended complaint, Ms. McKeithen shall state her federal and state claims in separate counts. For her federal claims under § 1983, Ms. McKeithen shall plead separate counts for each constitutional amendment. Likewise, for her state claims, Ms. McKeithen shall plead in separate counts each state-law theory under which she seeks recovery. In

---

272 So. 3d 155, 160 (Ala. 2018). The Court has denied the Hoover officers' motion to dismiss based on the officers' affirmative defense of immunity.

the heading of each count, Ms. McKeithen shall identify the defendants to which the count pertains.

The Clerk of Court shall please TERM Doc. 2.

**DONE** and **ORDERED** this October 15, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE